## No. 26299

### The People of the State of Colorado v. Jay Dee Breazeale

(544 P.2d 970)

Decided December 8, 1975.                    Rehearing denied February 9, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Hackethal, McNeill and Aucoin, P.C.; Kokish, Garner & Burns, John A. Burns, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was charged under twelve counts, being two charges of rape, six charges of deviate sexual intercourse by force, two charges of menacing, one charge of first-degree kidnapping and one charge of feloniously entering and remaining in an occupied building with intent to commit sexual assault. Allegedly, there were nine female victims. The crimes were alleged to have been committed between the dates of August 31, 1972 and November 10, 1972. The defendant entered pleas of not guilty by reason of insanity and later raised the question as to his competency to stand trial. A competency hearing was held and he was found competent to stand trial. Thereafter he pled guilty to two counts of rape and one count of deviate sexual intercourse by force (sections 18-3-401 and 403, C.R.S. 1973), and moved for sentencing under the Colorado Sex Offenders Act (section 16-13-201 *et seq.*, C.R.S. 1973).

Proceedings were commenced under the Sex Offenders Act and, upon motion of the district attorney, the other nine counts were ordered dismissed. After receipt of reports from two court-appointed psychiatrists and a probation officer, the court terminated the proceedings under the Sex Offenders Act and sentenced the defendant to a term of not less than 20 years nor more than 35 years on each of the three counts, to be served concurrently. We affirm.

We think our further statement of the matters transpiring in the district court will be more meaningful if preceded by a statement of the issues. Accordingly, we now list the defendant's contentions which constitute the issues here:

I. In accepting the pleas of guilty, the court failed to comply with C.R.C.P. 11 in the following particulars: (1) the defendant did not under-

stand the nature of the charge; (2) the defendant was confused; (3) the defendant believed he had entered pleas upon the condition that he be sentenced under the Sex Offenders Act; (4) the court erroneously advised the defendant that he was not eligible to be sent to the state reformatory; and (5) there is "a serious question as to whether the pleas entered by the Defendant were voluntarily on his part and not the result of undue influence or coercion on the part of anyone."

· II. Section 16-13-209, C.R.S. 1973 provides:

"After reviewing the reports of the psychiatrists and the probation officer, the court may terminate proceedings under this part 2 and proceed with sentencing as otherwise provided by law."

This statute is unconstitutional in that it deprives the defendant of due process of law.

III. Assuming that the statute last mentioned is constitutional, in light of the reports before it, the court abused its discretion in terminating the proceedings.

IV. A person sentenced under the Sex Offenders Act must be committed to the custody of the Colorado Department of Institutions for an indeterminate term for a minimum of one day and a maximum of his natural life; and one of the conditions of sentencing under this Act is a finding by the court "that the defendant, if at large, constitutes a threat of bodily harm to members of the public . . . ."§§ 16-13-203 and 211(2), C.R.S. 1973. If the court, upon remand for an evidentiary hearing, finds that the defendant if at large constitutes such a threat, he must be committed under the Sex Offenders Act.

V. Each of the three crimes to which the defendant pled guilty are classified as class 3 felonies in the statutes above cited. Class 3 felonies have a penalty of not less than 5 years nor more than 40 years imprisonment. The district court committed error in that, without sufficient grounds, it sentenced the defendant to a minimum sentence more than 3 years greater than the minimum sentence provided by law.

After the defendant entered his insanity plea, the court appointed two psychiatrists, Dr. Frederick M. Miller and Dr. R. Robert Cohen, to examine the defendant and make reports. They, and a psychiatrist retained by the defendant, submitted their reports, each of which expressed the opinion that the defendant was legally sane at the time of the alleged commission of offenses.

After the defendant raised the competency issue and the matter was referred to another district judge for hearing in that particular, that judge appointed Dr. Miller to examine the defendant and report. Dr. Miller reported that the defendant was competent to stand trial, and the judge so ruled.

Thereafter on May 1, 1973, the defendant and his counsel, as well as a deputy district attorney, appeared in open court. Counsel mentioned that

it had been ruled that the defendant was competent to stand trial, and that the defendant was ready to enter pleas. The court noted that a day or two previously counsel had mentioned that pleas were being entered under the Sex Offenders Act. Commencing at that point the transcript reads as follows:

"THE COURT: When you say you mentioned the Sex Offenders Act, I want the record to clearly reflect that the Court will consider evidence of sentencing under that, but the Court will in no way indicate or promise especially that it will sentence under the Sex Offenders Act. The Court may very well sentence under the criminal statute, which means confinement in the State Penitentiary. I will make no — I have never made any indication to you, [Counsel for the defendant], that I would sentence him under the Sex Offenders Act, have I?

"[COUNSEL]: Certainly not.

"THE COURT: I surely want him to understand he may not get sentenced that way. He may be sentenced to the State Penitentiary, or he may, based on the evidence, if I feel appropriate, obviously I will do what I feel is appropriate, it's possible he could be —

"[COUNSEL]: As to place of incarceration, I believe in reading the statute it would be the same. He would be committed to the Department of Institutions.

"THE COURT: But it would be for an indeterminate period.

"[PROSECUTOR]: One day to life.

"THE COURT: The Court may enter a sentence of specific years to the Penitentiary.

"[COUNSEL]: Your Honor, quite frankly, in my discussions with [the prosecutor] and Mr. Breazeale, it was our understanding, and I could have been in error — might be my fault — that specifically the understanding was the Court never made any commitment. It was never discussed with the Court that the sentencing would be under the Sex Offenders Act in this instance. I briefly discussed it with [the prosecutor] this morning on the phone. This is the first time this came up to Mr. Breazeale's knowledge and to mine. It would be a little contrary to our earlier understandings. I am not saying that would necessarily negate the plea.

"THE COURT: I think we shouldn't enter a plea today then.

"[PROSECUTOR]: I agree, Your Honor.

"THE COURT: I want this thoroughly understood. I am not about to make any promise that he be sentenced under the Sex Offenders Act, and as a matter of fact, these two psychiatrists' reports are not too encouraging under a sentence of that kind. They say he has little chance of rehabilitation. I would want to listen to the evidence. Maybe it would be appropriate after I considered it all, but I don't want him to be under the impression there was any promise of that.

"[COUNSEL]: That is certainly not the case. I don't think Mr. Breazeale feels that way."

It was agreed that the matter stand continued to May 7, 1973.

On May 7, 1973 the defendant, his attorney and two deputy district attorneys appeared before the court. The defendant's counsel made a statement from which we infer that, prior to the May 1st hearing, there was an agreement with the district attorney's office whereby the defendant would enter the three pleas of guilty and be sentenced under the Sex Offenders Act. In any event at the May 7th hearing, counsel stated that, following the May 1st hearing, the district attorney's office maintained that it would take no position with respect to sentencing. Counsel stated that he had discussed these matters with the defendant, at which juncture the transcript continues:

"[W]e would at this time, Your Honor, ask to be rearraigned on those two counts — three counts, with the understanding if the pleas were tendered, it would be contingent on the understanding it would be under the Sex Offenders Act.

"THE COURT: I don't understand you. I have told you the Sex Offenders Act has nothing to do with your pleading and there is no indication whatever he is going to be sentenced under it. He may be, and he may not be, depending upon all other factors after the plea — after a plea or guilty verdict."

* * * *

"It doesn't have anything to do with the plea. The Court can't promise in plea bargaining to sentence him under that, and I made it abundantly clear — so clear in fact that I thought I might have bent over backward in trying to make it clear in sounding extremely harsh. I don't want to sound harsh. Just because I make it clear, I am not guaranteeing any kind of sentence here — any leniency or harshness — any kind of sentencing. I keep reaffirming it, and it's going to be in the record so many times. I don't want him to enter any plea under any understanding . . . ."

The three counts were read to the defendant and, after the reading of each one, the defendant entered a plea of guilty. Counsel for the defendant then stated:

"I would further indicate for the record there is a factual basis for all of these pleas."

* * * *

"We will further waive the taking of any testimony or evidence and would allow the District Attorney's file to act in its stead, as well as the probation report required by the Sex Offenders Act."

One of the prosecutors then presented to the court the reports of the Lakewood Department of Public Safety concerning the three crimes. The court read the three reports to the defendant. At the end of the reading of each report, the court asked the defendant whether the report was sub-

stantially true. As to each inquiry the defendant answered in the affirmative.

These reports set forth in considerable detail the acts of the defendant as described by the victims of the alleged crimes to which the defendant pled guilty. In each instance the defendant encountered the victim alone; in two cases he gained access into her home under pretexts; and in the other, he found the victim alone in a laundromat. In each instance the defendant pointed a revolver at the victim. In one instance he forced her to engage in sexual intercourse; in another, he forced her to engage in fellatio; and in the third, he forced her to engage in both sexual intercourse and fellatio.

The court continued with a detailed explanation of the defendant's rights to persist in his plea of not guilty; to have a trial by jury of twelve; to have any count proved to the satisfaction of a jury beyond a reasonable doubt; to hear each witness and have his attorney cross-examine the witness; not to testify at trial if he desired not to do so; and to have appointed counsel. The court then explained to defendant the sentences which could be imposed as to each count, being not less than five nor more than forty years imprisonment, and that the sentences might run consecutively or concurrently. The court made the statement, with which the prosecutor agreed, that he did not believe that the defendant would be eligible to go to the state reformatory. As each of the several rights were explained, the defendant stated that he understood them.

The court added, "Now, there is also a possible sentence for each one of these offenses under the Sex Offenders Act." At this point the record continues:

"[COUNSEL FOR DEFENDANT]: May I once again reiterate for the record, these are tendered solely and exclusively and conditioned on the fact the defendant would be sentenced under the Sex Offenders Act.

"THE COURT: What did you say?

"[COUNSEL]: As I said earlier, Your Honor, the pleas are being tendered solely and exclusively and conditioned on the fact that the defendant would be sentenced under the Sex Offenders Act.

"THE COURT: You are almost in contempt of Court for saying that. The record is so replete with the understanding he is not going to be sentenced under the Sex Offenders Act, except in the discretion of the Court, that it's almost contemptuous."

One reason, among others, that we include this last quotation from the transcript is that we surmise that this is the basis for the defendant's statement here that "the record in the district court establishes a clear bias on the part of the court toward the defendant." If this is the basis for the alleged bias, we do not agree with the defendant's contention. It does not appear to us that under the circumstances the judge's remark can be characterized as injudicious or intemperate.

There followed some dialogue between the court, the prosecutor and counsel. Counsel then stated that he had made the statement to the court because the defendant had "asked me to tender these pleas conditioned on sentencing under the Sex Offenders Act." The court told the defendant and counsel that there was a good chance that the defendant would be sent to the penitentiary for a substantial period of time. He added: "I don't want any implication that you have any kind of promise in this Court you are going to be sentenced under the Sex Offenders Act. You probably won't be."

After more dialogue the court suggested that the pleas not be accepted and the case go to trial. The defendant then stated, "Your Honor, I wish to go ahead and enter the plea stated previously." He further stated that the understood that there was no understanding on anyone's part that he was going to be sentenced under the Sex Offenders Act. His attorney concurred in the understanding and to the entry of the pleas. After further advisement as to penalties, including those under the Sex Offenders Act, and as to other rights (including particularly the fact that there were no promises, threats or inducements), the court accepted the pleas of guilty.

The matter was continued until May 14, 1973. The matter again came before the court on the last named date, at which time the prosecutor moved the dismissal of the remaining nine counts, being all of the counts except those to which the defendant had entered his three pleas of guilty. The court ordered the nine counts dismissed. The court ordered that the matter proceed under the Sex Offenders Act and that the reports of Dr. Miller and Dr. Cohen under that Act be submitted by June 11, 1973. It further ordered that the report of the probation department be filed by July 2, 1973.

The matter again came before the court on July 5, 1973, the court in the meantime having received the reports from the two doctors and from the probation department. The reports from the two doctors were supplemental to their earlier reports on the question of sanity. Both doctors found that the defendant, if at large, would constitute a threat of bodily harm to members of the public. Both found that he was mentally competent and not mentally deficient. Both found that he could not be adequately supervised on probation. Dr. Cohen stated that the defendant would benefit from psychiatric treatment. Dr. Miller had misgivings as to whether psychotherapy in a prison or a state hospital setting could benefit the defendant. In his report, the chief probation officer expressed the opinion that the defendant definitely needed treatment for his sexual problems and recommended he be sentenced under the Sex Offenders Act in order that such treatment could be obtained.

The court requested defendant and his counsel to read the doctors' original and supplemental reports and the probation report. This was done. Defendant's counsel then argued for a continuance of the proceedings un-

der the Sex Offenders Act and ultimate sentencing thereunder.

The court terminated the proceedings under the Sex Offenders Act and, as mentioned above, sentenced the defendant to the penitentiary for three terms, each from 20 to 35 years imprisonment, the sentences to run concurrently.

Immediately thereafter defendant's counsel requested, and was given permission, to withdraw as attorney for the defendant. Other counsel appear here.

## I.

■ In large part, the preceding exposition discloses without further comment that there was compliance with Crim. P. 11, particularly as that rule existed as Colo. R. Crim. P. 11 prior to 1974. We need to comment only as to two matters among the assignments of error relating to the first issue listed in this opinion. The counts in the information were so phrased that they were readily comprehensible as to the nature of the charge,[1] except that there was no definition of the term "deviate sexual intercourse." The police reports relating to the two instances of fellatio, which were read to the defendant as above mentioned, described the alleged act of fellatio in plain, ordinary, readily understandable, and even earthy language. It is beyond question that the defendant understood the meaning of "deviate sexual intercourse."

The other matter to be mentioned under Rule 11 is the fact that the court erred in stating that it did not believe that the defendant would be eligible to go to the state reformatory. Here, the court was referring to penalties if the defendant were not sentenced under the Sex Offenders Act. Immediately thereafter the court stated in effect that a sentence to the reformatory might be a possible punishment. Independently of the court's statement as to a "possibility," the error here was not reversible. We agree with the Attorney General that the removal of the alternative of reformatory sentence would, if anything, dissuade the defendant from pleading guilty.

## II.

■ The defendant argues that — in permitting the court to terminate proceedings under the Sex Offenders Act after reviewing reports of the psychiatrists and probation officer — the statute is unconstitutional as a violation of due process of law. Defendant relies upon *Specht v. Patterson,* 386 U.S. 605, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967). *Specht* held that, under Colorado's preceding sex offender act, a defendant's constitutional rights were violated by permitting the imposition of an indeterminate commitment without a due-process hearing. The case is clearly distinguishable as here a sex-offender commitment has not been

---

[1] *SeePeople v. Lottie,* 183 Colo. 308, 516 P.2d 430 (1973).

imposed. The present Sex Offender Act was designed to meet the requirements of *Specht*.

We have here a situation in which there is no constitutional mandate requiring a sex offender's act. The provisions of this Act vest the trial court with discretion to commit a defendant under an alternate sentence. This is similar to the discretion in a court to suspend a sentence or to grant probation.

From the wording of the Sex Offenders Act, it appears that a defendant may require the commencement of a hearing. However, the matter of whether there should be sentencing under the Act is an alternative which may be granted or denied by the court, once the psychiatrists and probation officer's reports have been filed and reviewed. This being a sentencing alternative, a constitutional right is not attained.

■ The defendant argues further that, since the court did not continue with proceedings under the Sex Offenders Act, including the holding of a hearing, legislative intent was violated. We cannot agree. Basically, the General Assembly defined the crimes, to which the defendant pleaded guilty, classified them as Class 3 felonies and prescribed the penalty therefor. Separately, the General Assembly enacted the Sex Offenders Act, and prescribed all the processes to be followed in the event the court permitted these processes to operate until sentencing took place under the Act. The legislature, however, stated plainly and clearly, as quoted earlier in this opinion, that the court might terminate proceedings and proceed with sentencing as otherwise provided by law after reviewing of reports of the psychiatrists and the probation officer. While the defendant contends that the General Assembly stated that the purpose of the Sex Offenders Act was "for the better administration of justice and the more efficient punishment, treatment and rehabilitation of persons convicted of crimes," this does not negate the plain legislative intent contained in the section which expressly permits termination of the proceedings.

### III.

■ The defendant has argued at length that the court abused its discretion in not permitting the defendant to be sentenced under the Sex Offenders Act and thereby be subject to rehabilitation. To quite an extent the argument is an impassioned plea which properly should be made to a trial court to convince that court that the defendant should be so sentenced — and such an impassioned plea was made to the trial court. Here, however, we are asked to say that the court abused its discretion. This we cannot do. Dr. Miller's report, together with a number of matters mentioned by him and the other psychiatrists, are adequate support for the conclusion reached by the trial court that he should not be sentenced under the Sex Offenders Act.

## IV.

■ The Sex Offenders Act requires, prior to sentencing thereunder, a finding by the court "that the defendant, if at large, constitutes a threat of bodily harm to members of the public . . . ." This, according to the defendant, *requires* a person to be sentenced under the Act if the court makes such a finding. Not so. That this finding must be a prerequisite to sentencing under the Act does not carry the mandate which the defendant suggests. The General Assembly permits the court to terminate proceedings, irrespective of this finding. *People v. Lyons,* 185 Colo. 112, 521 P.2d 1265 (1974); and *People v. Sanchez,* 184 Colo. 379, 520 P.2d 751 (1974).

## V.

■ There was ample justification for the sentences of 20 to 35 years imprisonment on each count, to be served concurrently, and there was no abuse of discretion. *See People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975); and *People v. Euresti,* 187 Colo. 266, 529 P.2d 1319 (1975).

Judgment affirmed.

MR. JUSTICE ERICKSON does not participate.