The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**Larry W. WHITE, Defendant-Appellant.**

No. 80SA348.

Supreme Court of Colorado,
En Banc.

Jan. 10, 1983.
Rehearing Denied Jan. 24, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Litigation Section, Denver, for plaintiff-appellee.

Larry Steven Pozner and Patrick D. Dowdle, Bettenburg, Miller, Makkai & Dowdle, Denver, for defendant-appellant.

LEE, Justice.

Defendant Larry W. White pleaded guilty, pursuant to a plea bargain, to rape in violation of 1971 Perm.Supp., C.R.S.1963, 40–3–401(1)(d).[1] Proceedings were commenced under the Colorado Sex Offenders Act of 1968 (C.S.O.A.) (Act), section 16–13–201 et seq., C.R.S.1973 (1978 Repl.Vol. 8), and the defendant was committed to the Department of Institutions (now Department of Corrections) for an indeterminate term of one day to natural life. Defendant appeals from the denial by the district court of a Rule 35(b) motion challenging on several grounds the constitutionality of the Act and its application to him. We find the Act to be facially constitutional and that it was constitutionally applied to the defendant. We therefore affirm the judgment.

The facts giving rise to the defendant's conviction are not in dispute. Defendant admitted forcibly raping a 13-year-old girl in Denver on January 13 and 14, 1974. His guilty plea was taken in the district court on September 24, 1975. The record demonstrated that a complete and thorough advisement of rights was given to the defendant as well as a full explanation of the charge to which he was pleading guilty, the elements thereof and the possible punishment, including the possibility of being sentenced under the C.S.O.A. At the court's request, a factual foundation of the rape incident was detailed by the defendant. The court then found the defendant guilty of rape.

The court subsequently ordered commencement of proceedings under the C.S.O.A. The defendant was examined by two court-appointed psychiatrists pursuant to section 16–13–207, C.R.S.1973 (1978 Repl. Vol. 8). A report was also ordered from the probation department as required by section 16–13–208, C.R.S.1973 (1978 Repl.Vol. 8). On November 24 and 25, 1975, an evidentiary hearing was held pursuant to section 16–13–210, C.R.S.1973 (1978 Repl.Vol. 8). The court found the defendant to be a sex offender and also found that, beyond a reasonable doubt, he constituted a threat of bodily harm to the public pursuant to section 16–13–211(2), C.R.S.1973 (1978 Repl. Vol. 8). The court committed the defendant to the custody of the Department of Institutions for an indeterminate term of one day to life.[2]

The defendant filed a Rule 35(b) motion challenging the constitutionality of the Colorado Sex Offenders Act. Following a hearing, the district court denied the motion on February 28, 1980.

I.

The defendant asserts that the C.S.O.A. violates federal and state guarantees of due process of law and that no guidelines are delineated for treatment, transfer, and release. See U.S. Const. amend. XIV; Colo. Const. art. II, sec. 25. This statute and like statutes have undergone a battery of challenges. Precedent is not lacking to uphold the facial constitutionality of the C.S.O.A. and its predecessor. See generally Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); Trueblood v. Tinsley, 316 F.2d 783 (10th Cir.1963); People v. Breazeale, 190 Colo. 17, 544 P.2d 970 (1976); Vanderhoof v. People, 152 Colo. 147, 380 P.2d 903 (1963); Trueblood v. Tinsley, 148 Colo. 503, 366 P.2d 655 (1961); see also People v. Medina, 193 Colo. 190, 564 P.2d

1. Since repealed and reenacted in different form as sections 18–3–402 and –403 (1982 Supp. to 1978 Repl.Vol. 8).

2. Subsequent to the defendant's commitment, on April 5, 1978 he was transferred from the Colorado State Penitentiary to the Colorado State Hospital for psychiatric treatment. He was returned to the Colorado State Penitentiary at his own request after he resisted treatment programs offered at the hospital.

119 (1977); *People v. Lyons,* 185 Colo. 112, 521 P.2d 1265 (1974); *Jordan v. People,* 161 Colo. 54, 419 P.2d 656 (1966); *Ray v. People,* 160 Colo. 173, 415 P.2d 328 (1966); *Raullerson v. People,* 157 Colo. 462, 404 P.2d 149 (1965); *People v. Ingram,* 40 Colo.App. 518, 582 P.2d 689 (1978).

■ The defendant claims that the C.S.O.A. is violative of due process guarantees. The United States Supreme Court has examined our predecessor statute and found the only element lacking to be the right to a hearing (including the right to be present there with counsel, to have an opportunity to be heard, to confront adverse witnesses, to cross-examine, to offer evidence, and to appeal) prior to the C.S.O.A. sentencing. *Specht v. Patterson, supra.* The statute was thereafter amended to incorporate these requirements, and this defendant was afforded a full and complete due process hearing.

The statute has been examined under our own as well as the federal due process clause and has been held to satisfy constitutional requirements. *See People v. Breazeale, supra; Trueblood v. Tinsley, supra.* We have held the primary purpose of the statute to be the protection of members of the public from proven dangerous sex offenders. *Trueblood v. Tinsley,* 148 Colo. at 507, 366 P.2d at 658; *see also Specht v. Tinsley,* 153 Colo. 235, 385 P.2d 423 (1963) (overruled on other grounds in *Specht v. Patterson, supra*). This is a legitimate legislative objective and the statute is rationally related to the accomplishment of this objective.

■ The defendant claims the statute is devoid of standards which would allow a constitutional application of its terms to him. We do not agree.

Prior to commitment under the C.S.O.A., the defendant must be found to be a danger to society beyond a reasonable doubt. The court must receive evidence on the issues whether the defendant is mentally deficient, whether he could benefit from psychiatric treatment, and whether he could be adequately supervised on probation, as well as the main issue: whether the defendant, if at large, would constitute a threat of bodily harm to the public. Section 16–13–210(3) and section 16–13–207(2)(a) and (b), C.R.S.1973 (1978 Repl.Vol. 8). If the defendant could be adequately supervised on probation, the court has the option of terminating proceedings under the C.S.O.A. and sentencing the defendant under section 18–1–105, C.R.S.1973 (1982 Supp.). Section 16–13–216(5), C.R.S.1973 (1978 Repl.Vol. 8), authorizes the parole board to release the defendant if it is in the best interest of the public and the defendant, and the defendant, if released, would not constitute a threat of bodily harm to the public. In addition, section 16–13–216(2), C.R.S.1973 (1982 Supp.), authorizes the board to transfer the defendant to a different facility when such transfer is in the best interests of the defendant and the public.

We find no violation of the defendant's due process rights as the C.S.O.A. was applied to him. Furthermore, the mandated review by the board of parole within six months after the individual is committed and every year thereafter satisfies continuing procedural due process requirements. *See* section 16–13–216(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).

II.

The defendant also contends that the C.S.O.A. violates equal protection guarantees in that civil commitments under section 27–10–101 *et seq.,* C.R.S.1973 (1982 Repl.Vol. 11), and commitments for mentally ill prisoners under section 17–23–101 *et seq.,* C.R.S.1973 (1982 Supp. to 1978 Repl.Vol. 8), afford greater procedural protections than does commitment under the Act. The C.S.O.A. and its predecessor have been attacked on equal protection grounds on numerous occasions and have been uniformly upheld. *See Vanderhoof v. People, supra; Trueblood v. Tinsley, supra; Specht v. People,* 156 Colo. 12, 396 P.2d 838 (1964); *Specht v. Tinsley,* 153 Colo. 235, 385 P.2d 423 (1963) (overruled on other grounds in *Specht v. Patterson, supra*).

As has recently been restated in *People v. McKnight,* 626 P.2d 678, 683 (Colo. 1981): "Equal protection prohibits a state from enacting a statute which prescribes different punishments for the same acts committed under like circumstances by persons similarly situated." *See also Baxstrom v. Herald,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620, 624 (1966); *Vanderhoof v. People, supra; Trueblood v. Tinsley, supra.* Further, as we stated in *People v. Chavez,* 629 P.2d 1040, 1051 (Colo.1981): "In the absence of a suspect classification or an intrusion on a fundamental right, the traditional standard of review [for an equal protection challenge] requires that the challenged classification 'bear some rational relationship to legitimate state purposes.' *San Antonio School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16, 47 (1973)."[3] Those committed civilly and other mentally ill criminals neither committed the same acts nor were they similarly situated as those persons who are committed under the C.S.O.A. In the case of a convicted sex offender, criminal guilt has been established and the state may properly take cognizance of the continuing presence of a threat to public safety rather than emphasizing the defendant's interest in his early release. As civilly committed individuals have committed no crime, the rationale for their continued confinement is less compelling, and they are generally accorded more procedural protections. Thus, the distinction drawn in the statutes between release procedures for those criminally convicted under the sex offenders act and others civilly committed does not violate equal protection. *Hill v. Burke,* 422 F.2d 1195 (7th Cir.1970), *cert. denied,* 400 U.S. 944, 91 S.Ct. 248, 27 L.Ed.2d 249 (1970); *compare United States v. Ecker,* 543 F.2d 178 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977) (rational basis exists to distinguish between release of civilly committed individuals and those found not guilty by reason of insanity); *People v. Chavez,* 629 P.2d 1040 (Colo.1981); *People v. Giles,* 192 Colo. 240, 557 P.2d 408 (1976).

The legislature, in its wisdom, has deemed sex offenders who, beyond a reasonable doubt, constitute a threat of bodily harm to the public, to be a particular menace to society and thus to warrant a particular statutory treatment at the discretion of the trial court. Sections 16–13–211(2), 16–13–203, C.R.S.1973 (1978 Repl.Vol. 8). There is a certain and definite rational basis to this scheme.

The sex crimes which fall under the purview of this Act are particularly heinous in their compromising of the individual dignity and liberty of the victims. As stated, the primary purpose of the Act is the protection of the public from such a menace. In this essential regard, the C.S.O.A. differs from the previously cited statutes concerning those civilly committed or other mentally ill criminals, and thus warrants a different scheme of operation. We thus view the statutory scheme as creating a reasonable classification based upon rational distinctions to accomplish the legitimate purpose under the police power of protecting the public, and thus, it is not violative of equal protection.

### III.

The defendant further argues the C.S.O.A. to be void for vagueness. We do not agree. A statute is void for vagueness when it does not give fair and adequate warning as to what is prohibited and when it does not lend itself to meaningful judicial review. *LDS, Inc. v. Healy,* 197 Colo. 19, 21, 589 P.2d 490, 491 (1979); *People in the Interest of C.M. and E.M.,* 630 P.2d 593 (Colo.1981). What is prohibited is enunciated with clarity in section 16–13–202(5), C.R.S.1973 (1978 Repl.Vol. 8). Men of common intelligence do not have to guess at its meaning, nor is its application arbitrary. *See Connally v. General Construction Co.,*

---

**3.** No suspect classification or fundamental rights are involved in the defendant's appeal. Although sentencing options under the C.S.O.A. may involve a deprivation of liberty, one validly convicted of a crime does not have a fundamental right to his unrestricted liberty. *See People v. Chavez,* 629 P.2d at 1052, and cases cited therein.

269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Weeks,* 197 Colo. 175, 591 P.2d 91 (1979). Furthermore, the requirement of an evidentiary hearing, including other procedural safeguards previously enumerated, allow for adequate judicial review of the commitment procedure.

## IV.

The defendant last argues that his indeterminate sentence constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution. He contends that his constitutional rights would be violated if he were made to serve a life sentence without being given treatment directed toward aiding him to overcome the finding of the district court that he presents a continuing danger and threat of bodily harm to members of the public. We do not agree with this assertion.

Nothing in the constitution requires that criminal defendants receive treatment, and further, a life sentence has been held not to amount to a per se violation of the prohibition against cruel and unusual punishment. *People v. Lake,* 195 Colo. 454, 580 P.2d 788 (1978). The legislature is entitled to deference in devising a punishment scheme "so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved...." *Gregg v. Georgia,* 428 U.S. 153, 175, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, 875–876 (1976); further, protection of society alone may justify incarceration. *See generally O'Connor v. Donaldson,* 422 U.S. 563, 582–583, 95 S.Ct. 2486, 2497–2498, 45 L.Ed.2d 396, 411 (1975) (Burger, C.J., concurring). The fact that the legislature has chosen penal goals of protection and restraint rather than treatment does not establish that the defendant's confinement is inconsistent with

existing standards of decency or creates unnecessary suffering serving no legitimate purpose. *Gregg v. Georgia, supra; compare Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). Since the sex offenders act contemplates restraint for individuals exhibiting dangerous criminal conduct, with protection of society as its major goal, *Trueblood v. Tinsley, supra,* restraint without treatment is not unconstitutional.[4] We hold that indeterminate sentencing under the C.S.O.A. does not constitute cruel and unusual punishment. *See, e.g., Raullerson v. People,* 157 Colo. 462, 404 P.2d 149 (1965); *Specht v. People,* 156 Colo. 12, 396 P.2d 838 (1964); *Specht v. Tinsley,* 153 Colo. 235, 385 P.2d 423 (1963) (reversed on other grounds, *Specht v. Patterson, supra*).

The judgment of the district court is affirmed.

QUINN, J., does not participate.

---

4. However, the defendant is not necessarily to be sentenced to incarceration only. The parole board has the option of transferring the defendant to another institution if treatment is deemed appropriate. Section 16–13–216(2), C.R.S.1973 (1982 Supp.). *See supra* note 2. The defendant may be released if the parole board determines that he is no longer a threat to the public, and release is in the best interests of the public and the defendant. Section 16–13–216(5), C.R.S.1973 (1978 Repl.Vol. 8). The parole board must consider all reports, information, and records concerning the defendant in its annual review to determine whether he should be paroled. Section 16–13–216(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).