The PEOPLE of the State of
Colorado, Petitioner,

v.

Earl S. BLACK, Respondent.

No. 94SC663.

Supreme Court of Colorado,
En Banc.

Feb. 12, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Robert M. Petrusak, Senior Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to consider whether the court of appeals erred in remanding this case to the trial court to determine whether the parole eligibility scheme, as applied to persons convicted of sex offenses occurring between July 1, 1979, and July 1, 1985, violates the equal protection clause. *People v. Black*, 894 P.2d 767 (Colo.App.1994). We find no violation of the equal protection clause and therefore reverse the judgment of the court of appeals.

## I.

Defendant Earl S. Black (Black) was convicted in 1984 of one count of first-degree sexual assault, § 18–3–402, 8B C.R.S. (1978 & 1983 Supp.), and one count of crime of violence, § 16–11–309, 8A C.R.S. (1982 Supp.), for a sexual assault that he committed in 1983. Black was sentenced to a term of 14 years' imprisonment plus one year of mandatory parole.

In August 1989, Black, *pro se,* filed a Crim. P. 35(c) motion claiming that he had served his entire sentence and that his release on parole was mandatory. The trial court de-nied the motion, and the court of appeals affirmed the trial court's order. *See People v. Black*, (Colo.App. No. 89CA1840, August 16, 1990) (not selected for official publication).

In February 1993, Black, through counsel, filed another Crim. P. 35(c) motion claiming that his sentence was illegal because it included a period of mandatory parole and because it violated both the due process and equal protection clauses. The trial court denied the motion, but modified Black's sentence by deleting the one-year mandatory parole requirement. Black appealed.

The court of appeals found that any illegality was eliminated by the trial court's deletion of the parole requirement, and rejected Black's due process claim. *People v. Black*, 894 P.2d at 771. However, the court of appeals held that Black had alleged facts supporting an "as applied" equal protection claim and remanded the case to the trial court for development of the facts. *Id.* at 772. The court of appeals instructed the trial court to determine whether the relevant sentencing scheme "as applied to this defendant, creates disparate treatment without a rational basis for such disparity." *Id.* The People's petition for certiorari review was subsequently granted by this court as to the following issue:

> Whether the court of appeals erred in remanding this case to the trial court to determine whether the parole eligibility scheme as applied to sex offenders violates the Equal Protection Clause.

## II.

Black's equal protection theory is that the applicable sentencing scheme treats him more harshly than it treats other persons who have been convicted of both sex offenses and more serious crimes. In *Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990), we explained in detail the operation of the sentencing statutes for crimes committed between July 1, 1979, and July 1, 1985, which is the relevant time period for the present case. For most offenses, the determinate sentencing laws provide that parole is mandatory. That is, an inmate who has earned sufficient

good time and earned time credits toward completion of his sentence is entitled to be released on parole and the Colorado State Parole Board (Parole Board) has no discretion to deny parole. *Thiret v. Kautzky,* 792 P.2d at 803–805.

Sentences for sex offenses, however, are not subject to mandatory parole. An inmate serving a sentence for conviction of a sex offense also earns good time and earned time credits but such credits serve only to make the inmate eligible for parole. The Parole Board retains discretion to release the inmate on parole and may require an inmate to serve the entire sentence in incarceration. *Thiret v. Kautzky,* 792 P.2d at 805–806.

This statutory mixture of mandatory and discretionary parole provisions has given rise to questions in the cases of inmates who are serving concurrent sentences for multiple crimes when the underlying crimes are subject to different treatment for purposes of parole. In *Thiret,* for example, the defendant was sentenced concurrently to a ten-year sentence with mandatory parole for attempted murder and a four-year sentence with discretionary parole for sexual assault on a child. *Id.* at 805. We rejected the prosecution's contention that the defendant was subject to a "hybrid" sentence of ten years with discretionary parole. *Id.* at 808. Instead, we found the governing sentence rule of *Price v. Mills,* 728 P.2d 715 (Colo. 1986), to be dispositive. *Id.* Under the governing sentence rule, the longest of an inmate's concurrent sentences and its parole provisions prevails. Because Thiret was eligible for parole on his ten-year mandatory parole sentence, we ordered him released on parole. *Thiret v. Kautzky,* 792 P.2d at 808.

A similar issue was raised in *Vaughn v. Gunter,* 820 P.2d 659 (Colo.1991), where the inmate was serving concurrent sentences for crimes occurring both before and after July 1, 1985, when mandatory parole was statutorily abolished. Again, we applied the governing sentence rule and held that the inmate's parole eligibility was determined by the longest sentence, which in that case carried a mandatory parole provision. We rejected the prosecution's argument that the governing sentence rule should be abandoned because it would produce absurd results. We noted that the governing sentence rule in fact had been applied to the defendant by the Department of Corrections, that no reasonable alternative rule was proposed, and that the longest sentence carried the greatest potential incarceration time. *Id.* at 662.

■ The case now before us presents a related but different issue from those considered in *Thiret* and *Vaughn.* Because Black received a single fourteen-year sentence for a sex offense subject to discretionary parole, his case does not present the problem of concurrent sentences with different parole provisions like *Thiret* and *Vaughn.* The Parole Board, exercising its discretion, has declined to parole Black and he has served his entire sentence in incarceration.[1]

Black contends that because of the statutory mixture of mandatory and discretionary parole, he has been treated more harshly than others who have committed more serious crimes and that this disparate treatment violates his right to equal protection. He contends that other offenders who have been convicted of both a sex offense subject to discretionary parole and another more serious crime will serve less time in incarceration than he will because the longer sentences for the more serious crimes will be the governing sentences and such sentences are subject to mandatory parole. The court of appeals, in accepting Black's "as-applied" equal protection theory, remanded the case so that Black could present evidence of other offend-

---

1. Generally, an appellate court will decline to render an opinion on the merits of an appeal when events subsequent to the underlying litigation have rendered the issue moot. *Humphrey v. Southwestern Development Co.,* 734 P.2d 637 (Colo.1987).

Exceptions to this general rule are those cases in which an otherwise moot matter is capable of repetition, yet evading review, and those cases involving matters of great public importance or an allegedly recurring constitutional violation. *Id.* Although Black was scheduled for discharge in July 1995 and by now has served his term and been released, the issue presented here is capable of repetition but may evade review. *Massey v. People,* 736 P.2d 19 (Colo.1987); *People v. Quinonez,* 735 P.2d 159 (Colo.1987); *Urevich v. Woodard,* 667 P.2d 760 (Colo.1983). We thus elect to issue an opinion and not dismiss this case as moot.

ers' sentences to prove that Black was punished more severely than other, more culpable offenders.

We find it unnecessary to remand this case for the presentation of evidence because we agree that the scenario described by Black and summarized above can occur under the determinate sentencing law applicable to crimes committed between July 1, 1979, and July 1, 1985. Construing Black's argument as a facial equal protection challenge to the provisions of discretionary parole for sex offenses subject to that law, we reject his argument and uphold the constitutionality of the law.

### III.

Black's equal protection analysis is an attempt to extend the theory first adopted by this court in *People v. Calvaresi,* 188 Colo. 277, 282, 534 P.2d 316, 318 (1975), where we held that "[a] statute which prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations is violative of a person's right to equal protection of the laws." *Calvaresi* found that the culpable mental states required for reckless manslaughter and criminally negligent homicide were indistinguishable and invalidated the classification of the first crime as a felony and the second crime as a misdemeanor. *Id.* at 282–283, 534 P.2d at 318–319. In subsequent cases, however, we declined to use that equal protection analysis as a means to review the legislature's ranking of crimes for purposes of punishment. For example, in *People v. Morgan,* 637 P.2d 338 (Colo.1981), the court rejected an equal protection challenge to the felony murder statute. The defendant contended that felony murder could not constitutionally be punished more severely than criminally negligent homicide because criminally negligent homicide was the more serious of the

two crimes. The defendant's argument regarding the relative seriousness of the two crimes was based on his correct observation that felony murder did not require proof of a culpable mental state but criminally negligent homicide did require such proof. *Id.* at 345. We rejected the defendant's argument and held that the legislature was free to determine the severity of the punishment to be imposed on separately defined crimes:

> The legislature may provide that a homicide committed during defendant's participation in a felony shall be punishable as first-degree murder. This legislative decision is in no way rendered arbitrary by a legislative determination that criminally negligent homicide, although requiring a culpable mental state, is a less serious offense.

*Id.* (citation omitted). Recent cases have applied the equal protection analysis to cases involving different punishments for the same or very closely related crimes. *See, e.g., People v. Nguyen,* 900 P.2d 37 (Colo.1995) (invalidating the "attempt" section of the second degree assault statute); *Smith v. People,* 852 P.2d 420 (Colo.1993) (invalidating different penalties for second degree assault). Black cites no case in which the equal protection classifications invalidated have involved different combinations of crimes. There was no equal protection violation in *Morgan* and there is none in the case now before us because persons who commit different crimes and different combinations of crimes are not similarly situated.[2]

█ The threshold question in any equal protection challenge is whether the persons allegedly subject to disparate treatment are in fact similarly situated. *Harris v. The Ark,* 810 P.2d 226 (Colo.1991). An equal protection challenge must fail if persons alleging disparate treatment are not similarly situat-

---

2. Black's definition of the classifications at issue has varied. For example, his brief in this court states that he "challenges the disparate treatment of inmates like himself convicted of a single sex offense and the more lenient treatment of inmates who are: (a) convicted of the same offense plus an additional offense; or (b) convicted of kidnapping involving sexual assault; or (c) convicted of felony assault involving sexual assault." He also challenges "the irrationality of the pres-

ent sentencing scheme which results in a person being treated more or less harshly depending on the date on which they are sentenced." In his Crim. P. 35(c) motion, Black alleged that he was denied equal protection "because he is treated more harshly than inmates who are identically situated except for the fact that they have been convicted of sexual assault plus an additional offense."

ed. *Western Metal Lath v. Acoustical & Constr. Supply, Inc.,* 851 P.2d 875, 880 (Colo. 1993).

■ Black's equal protection claim does not meet the threshold test. Black and persons who have been convicted of only sex offenses are not similarly situated to those sex offenders who committed multiple offenses during the same time period and who received longer concurrent sentences for the other crimes. They are not similarly situated because inmates in the two categories have committed different crimes, and the multiple offenders will not always be released prior to Black or treated less harshly. Black and persons in his position become parole-eligible and actually may be granted discretionary parole after a shorter period of incarceration than a sex offender whose sentence is governed by a longer concurrent sentence imposed for a non-sex offense. Thus, Black has failed to prove disparate treatment of similarly situated classes.

■ Even assuming that Black meets the similarly situated test, his equal protection challenge fails the rational basis test. In the absence of a classification that infringes on a fundamental right, creates a suspect class, or creates a classification subject to an intermediate level of scrutiny, such as illegitimacy and gender, "persons may be treated differently without violating equal protection guarantees if the statutory classification has some reasonable basis in fact and bears a rational relationship to a legitimate state purpose." *Dove v. Delgado,* 808 P.2d 1270, 1274 (Colo. 1991). Here, the sentencing scheme at issue does not infringe on a fundamental right, create a suspect classification, or involve an intermediate level of scrutiny. Thus, we examine its validity under a rational basis standard of review.

■ Under that standard, a presumption of constitutionality attaches to a statute and the party asserting the unconstitutionality of the statute bears the burden of proving its invalidity beyond a reasonable doubt. *Dove,* 808 P.2d at 1274. The question is whether the classification bears a reasonable relationship to a legitimate governmental interest. *Harris,* 810 P.2d at 233. Here, the

legitimate governmental interest is public safety. As we recognized in *Vaughn,* a longer sentence with a mandatory parole provision is a more serious sentence than a shorter sentence with a discretionary parole provision. This is so because an offender on parole is still serving a sentence of imprisonment and is subject to reincarceration for a parole violation. *Vaughn v. Gunter,* 820 P.2d at 662. Black attacks the reasoning of *Vaughn* by arguing that release on mandatory parole with the prospect of being reincarcerated for a parole violation is far less onerous and much more desirable to an offender than facing discretionary parole with the possibility of continuous incarceration. Black's subjective assessment of the relative merits of mandatory and discretionary parole does not make the sentencing scheme irrational. Longer sentences still carry the greater potential for incarceration and shorter sentences still have earlier eligibility for parole. That an inmate such as Black may serve his entire sentence in incarceration does not demonstrate that the sentencing scheme is not rationally related to the protection of public safety.

■ Finally, we reject the People's alternative argument that the Parole Board has complete discretion to grant or deny parole to all persons serving sentences for sex offenses regardless of any concurrent sentences they may be serving. The discretionary parole provisions of section 17-2-201(5)(a), 8A C.R.S. (1986), apply to convictions for sex offenses, and we see no basis to conclude that a person who has been concurrently sentenced for a sex offense loses the right to mandatory parole on a longer, otherwise governing sentence. *Thiret v. Kautzky,* 792 P.2d at 808; *Vaughn v. Gunter,* 820 P.2d at 662. Rather, we agree with the People that Black has failed to prove beyond a reasonable doubt that the parole eligibility scheme, as applied to persons convicted of sex offenses occurring between July 1, 1979, and July 1, 1985, violates the equal protection clause.

The judgment of the court of appeals is reversed, and the case is remanded with directions to reinstate the order of the dis-

trict court denying Black's petition for a writ of habeas corpus.

LOHR, J., concurs in part and dissents in part.

ERICKSON and KIRSHBAUM, JJ., join in the concurrence and dissent.

Justice LOHR concurring in part and dissenting in part:

Defendant Earl S. Black appealed a trial court's denial of his motion for post-conviction relief, filed pursuant to Crim. P. 35(c). The Colorado Court of Appeals affirmed the trial court's rejection of Black's due process and illegal sentencing claims, but held that the trial court had improperly dismissed his equal protection claim. *People v. Black*, 894 P.2d 767, 768–71 (Colo.App.1994). Construing Black's equal protection challenge as an "as applied" claim, the court of appeals held that an evidentiary hearing was necessary to resolve "material questions of fact which, if true, could provide a basis for relief on equal protection grounds." *Id.* at 769.

On certiorari review in this court, the majority analyzes Black's claim as a "facial" equal protection challenge and rejects his argument. Maj. op. at 1259–1260. In doing so, the majority applies our "governing sentence" rule, which specifies that the parole provisions applicable to the most lengthy of concurrent sentences govern eligibility for parole. For reasons detailed below, I would hold that when analyzed in such a way, the sentencing scheme violates equal protection principles. In order to obviate the constitutional deficiency, I would modify our "governing sentence" rule in the manner explained within so as to ensure consistency with equal protection requirements. The modification I propose would be more consistent with legislative intent and would result in affirmance of the trial court's denial of Black's Crim. P. 35(c) motion on a basis different than that adopted by the majority. I therefore respectfully concur in the majority's reversal of the judgment of the court of appeals but dissent to its reasoning.

## I.

### A.

A brief and somewhat simplified outline of the relevant sentencing structure will provide a useful background for the detailed analysis that follows. The equal protection issue now before us arises from the superimposition of our "governing sentence" rule on a legislative scheme that specifies "mandatory parole" for some offenses and "discretionary parole" for others. Under mandatory parole, a prisoner must be paroled after serving the sentence imposed less any good time and earned time credits. Under discretionary parole, a prisoner becomes eligible for parole at such time, but release on parole is discretionary with the parole authorities throughout the term of the sentence. A prisoner subject to discretionary parole, therefore, has no assurance that he will be granted parole before serving the full term of his sentence.

Pursuant to our "governing sentence" rule, a person serving concurrent sentences is subject to the parole provisions applicable to the longest of the sentences. When the longest sentence is subject to mandatory parole and a shorter, concurrent sentence is subject to discretionary parole, the prisoner may become entitled to mandatory parole before the shorter sentence has been fully served. In contrast, a prisoner serving only the identical single sentence subject to discretionary parole may not be granted parole until that sentence has been fully served. The anomalous result is that a prisoner serving multiple concurrent sentences may become entitled to release on parole before a prisoner serving only a single sentence identical to one of the shorter sentences being served by the offender sentenced for multiple crimes. It is this disparity in treatment upon which Black predicates his equal protection challenge.

### B.

Black was found guilty on January 9, 1984, of first degree sexual assault, § 18–3–402, 8B C.R.S. (1978 & 1983 Supp.), and one count of crime of violence, § 16–11–309, 8A C.R.S. (1982 Supp.), based on events that occurred on July 10, 1983. He was sentenced to a

fourteen-year term of imprisonment plus a one-year parole period.

On February 4, 1993, Black filed a Crim. P. 35(c) motion, asserting that his sentence illegally included a one-year period of parole and that application of the parole provisions to sex offenders in conjunction with the "governing sentence" rule as interpreted by this court resulted in violations of due process and equal protection. The trial court modified Black's sentence to eliminate the one-year period of parole, but otherwise denied his motion.

Black appealed, and the court of appeals rejected his claim of a due process violation and held that deletion of the one-year period of parole eliminated any illegality in his original sentence. *Black*, 894 P.2d at 768–71. As for Black's equal protection claim, the court construed his argument as an "as applied" equal protection challenge because of disputed factual assertions in his Crim. P. 35(c) motion, and held that an evidentiary hearing was necessary in order to resolve the disputed factual contentions. *Id.* at 769.[1] We then granted certiorari review to determine whether the court of appeals' decision to remand the case for an evidentiary hearing was appropriate.[2]

## II.

The General Assembly enacted detailed parole provisions for offenses committed between July 1, 1979, and July 1, 1984.[3] *See* *Thiret v. Kautzky*, 792 P.2d 801, 804–05 & n. 6 (Colo.1990); § 17–2–201(5)(a), 8A C.R.S. (1986). One of the defining characteristics of this statutory scheme is that anyone convicted of a sex offense is subject to discretionary parole provisions and is not entitled to a mandatory parole release after accumulating requisite good time and earned time credits.[4] Persons convicted of most other crimes are mandatorily released on parole. *Id.* The statutory parole provisions in conjunction with the "governing sentence" rule, *see Thiret*, 792 P.2d at 808; *Price v. Mills*, 728 P.2d 715, 718 (Colo.1986), result in a parole system that counterintuitively permits persons subject to a sex-offense sentence and a longer concurrent sentence providing for mandatory parole to obtain release on parole before a prisoner who is subject only to an identical, single, sex-offense sentence. In my opinion, the operation of the statutory provisions in conjunction with the "governing sentence" rule to produce such a result does not comport with legislative intent and is constitutionally infirm.

The purposes of the discretionary parole provision include promotion of public safety by monitoring the reintroduction of sex offenders into society, *Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir.), *cert. denied*, 506 U.S. 1008, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992), recognition of the elevated public safety concerns incident to release of those who have committed "particularly heinous

1. Specifically, Black argued in his Crim. P. 35(c) motion that the disparate treatment of sex offenders was not merely "a theoretical possibility" but was "the current practice of the Department of Corrections." Black supported his argument with several factual assertions, noting:

> The undersigned is aware of several individuals who were convicted of both sexual assault and burglary offenses occurring before July 1, 1985, who were automatically discharged in the wake of [*Vaughn v. Gunter*, 820 P.2d 659 (Colo.1991)], notwithstanding the fact that the Parole Board did not grant them [discretionary] parole and they had served less than the entire length of their sexual assault sentence. These inmates were discharged because the sentence for their non-sexual assault offense was longer than the sentence for their sexual assault offense and because they had served over half of their non-sexual assault sentence.

The court of appeals construed these factual assertions as part of an "as applied" equal protec-

tion challenge. *People v. Black*, 894 P.2d 767, 769 (Colo.App.1994).

2. We granted certiorari on the following issue:

> Whether the court of appeals erred in remanding this case to the trial court to determine whether the parole eligibility scheme as applied to sex offenders violates the Equal Protection Clause.

3. The general equal protection discussion throughout this opinion relates to sentencing and parole procedures for crimes committed between July 1, 1979, and July 1, 1984.

4. The discretionary parole provisions apply to those inmates convicted of a "sex offense" as defined in § 16–13–202(5), 8A C.R.S. (1986). § 17–2–201(5)(a), 8A C.R.S. (1986); *see also Aue v. Diesslin*, 798 P.2d 436, 438 (Colo.1990); *Thiret v. Kautzky*, 792 P.2d 801, 805–06 (Colo.1990).

crimes," *see White v. People,* 866 P.2d 1371, 1374 (Colo.1994) (*White II* ) (citing *People v. Kibel,* 701 P.2d 37, 44 (Colo.1985)); *People v. White,* 656 P.2d 690, 693 (Colo.1983) (*White I* ), and allowance of parole board flexibility in cases that may call for additional or continued rehabilitation efforts, *Kibel,* 701 P.2d at 44 n. 13. Because these concerns are particularly acute in cases involving sex offenders, the General Assembly passed a discretionary parole provision aimed at "any" sex offender. § 17–2–201(5)(a), 8A C.R.S. (1986). Yet, not all sex offenders are subject to discretionary parole provisions under the majority decision today. Instead, those who commit a sex offense by itself or in conjunction with a lesser offense [5] are subject to the appropriately indefinite discretionary parole procedure, whereas those who commit a sex offense in addition to a more serious offense are guaranteed release on mandatory parole.

Black raises a valid equal protection challenge to the discretionary parole provisions when read in conjunction with the "governing sentence" rule. Because (1) all sex offenders are similarly situated in reference to the purposes of the discretionary parole provision, (2) all those who are similarly situated are nevertheless subject to disparate parole procedures, and (3) although it is reasonable to distinguish between those who commit a sex offense by itself or in conjunction with a lesser offense and those who commit a sex offense along with a more serious offense, it is irrational to subject the former to continued incarceration subject to discretionary parole when the latter are released on mandatory parole, I respectfully dissent. I would uphold Black's equal protection claim but deny his request for relief and instead modify the "governing sentence" rule to comport with the statutory parole framework, public policy, and constitutional principles.

5. For the purposes of this opinion, a "lesser" offense is one that carries a technically shorter or equivalent sentencing term, irrespective of any parole possibilities, in comparison to the applicable sex offense term. A "more serious" offense is one that carries a technically longer sentencing term, irrespective of any parole possibilities, in comparison to the applicable sex offense term. However, the "more serious" offense category excludes class one felonies committed between

## III.

Those who are convicted of crimes committed on or after July 1, 1979, but before July 1, 1984, are subject to a unique set of statutory parole provisions. Mandatory parole provisions exist for most crimes committed in that period, with discretionary parole procedures for specifically enumerated crimes, including sex offenses. *Compare Thiret,* 792 P.2d at 804–05 & n. 6 *with* § 17–2–201(5)(a), 8A C.R.S. (1986). The discretionary parole provisions applicable to sex offenders are outlined in section 17–2–201(5)(a), 8A C.R.S. (1986):

> [A]s to any person sentenced for conviction of a sex offense [committed on or after July 1, 1979, but before July 1, 1984] ... the [parole] board has the sole power to grant or refuse to grant parole and to fix the condition thereof and has full discretion to set the duration of the term of parole granted, but in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court or five years, whichever is less.

In contrast, those who committed crimes other than sex offenses or class one felonies and who were not sentenced as habitual criminals during the applicable time frame are subject to mandatory parole provisions. *Thiret,* 792 P.2d at 804–05 & n. 6 ("Although there is no one provision in the Gorsuch [sentencing and parole] bill which specifically made parole mandatory for post-July 1, 1979 offenses, several provisions in that bill, as well as in subsequent amendments, considered together, clearly had this effect."). Good time and earned time credits accumulate for all sentences to determine parole eligibility. However, discretionary parole need never be granted despite eligibility, and the subject inmate may serve the entire term, whereas

July 1, 1979, and July 1, 1984, and further excludes offenses that were committed during the same period and that resulted in "habitual criminal convictions." We exclude the two latter categories of offenses from the definition of "more serious" offenses because sentences for those offenses are subject to the same discretionary parole provisions applicable to sex offenders. § 17–2–201(5)(a), 8A C.R.S. (1986).

mandatory parole must be granted when the inmate becomes eligible for parole.

The legislature's decision to differentiate between sex offenders and most other inmates for purposes of parole proved problematic in application to those who committed both sex offenses and other offenses. We reviewed just such a situation in *Thiret v. Kautzky*, 792 P.2d 801. In *Thiret*, we addressed whether discretionary or mandatory parole provisions would apply to an inmate who had served his entire sex offense term but remained confined on an attempted murder conviction that, in isolation, would have been subject to mandatory parole guidelines. *Id.* at 807. The department of corrections urged this court to allow the parole board to exercise continued discretionary parole even though the inmate had served his entire sex offense term. *Id.* We rejected this proposal and instead applied the "governing sentence" rule adopted in *Price v. Mills*, 728 P.2d at 718–19:

> [T]he 'governing' sentence is the longest sentence for which [the defendant] was sentenced, and the relevant parole provisions of that sentence apply to the entire 'composite' sentence.

*Thiret*, 792 P.2d at 808. The logical outgrowth of *Thiret* and *Price* is that one who commits a sex offense or a sex offense in conjunction with a lesser offense for which the offender receives a concurrent sentence is subject to discretionary parole and faces the likelihood of continued incarceration, but one who commits a sex offense and a more serious offense subject to concurrent sentences is released on mandatory parole. *See* maj. op. at 1258–1260. However, *Price* did not involve sex offenses or discretionary parole provisions, 728 P.2d at 717–19, and we did not anticipate in *Thiret* the difficulties that a strict application of the "governing sentence" rule would present in such a context.

## IV.

Black properly can raise a "facial" challenge pursuant to constitutional equal protection guarantees. U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25; *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 906 n. 7 (Colo.1993) (right to equal protection is encompassed by due process clause of Colorado Constitution). Although the court of appeals determined that Black's constitutional challenge was an "as applied" equal protection claim, *Black*, 894 P.2d at 769–70, I agree with the majority, maj. op. at 1259–1260, that this case can be analyzed better under a "facial" framework.[6]

**6.** The distinction between a "facial" and an "as applied" equal protection challenge is not always clear-cut. We described the difference recently:

> "First, the law may establish the classification 'on its face.' This means that the law by its own terms classifies persons for different treatment.... Second, the law may be tested in its 'application.' In these cases the law either shows no classification on its face or else indicates a classification which seems to be legitimate, but those challenging the legislation claim that the governmental officials who administer the law are applying it with different degrees of severity to different groups of persons who are described by some suspect trait."

*Western Metal v. Acoustical & Constr.*, 851 P.2d 875, 880 n. 7 (Colo.1993) (quoting John E. Nowak et al., *Constitutional Law* 600 (2d ed.1983)).

The court of appeals concluded that the discretionary parole provision, § 17–2–201(5)(a), 8A C.R.S. (1986), was not facially unconstitutional because the statutory language applies to "any" sex offender and "does not create a classification that would result in unequal treatment of some of the offenders who have committed a sexual assault offense." *People v. Black*, 894 P.2d 767, 769 (Colo.App.1994). If Black's challenge indeed involved only the discretionary parole provision, § 17–2–201(5)(a), 8A C.R.S. (1986), I would agree with the court of appeals that his facial challenge must fail and that the appropriate resolution would be a remand for an evidentiary hearing regarding his "as applied" claim. *See Black*, 894 P.2d at 769–70. Under such circumstances, I could not agree with the majority's conclusion that simply because "we agree that the scenario described by Black and summarized above can occur," maj. op. at 1260, Black's challenge is therefore a "facial" claim.

However, Black challenges the discretionary parole provision, § 17–2–201(5)(a), 8A C.R.S. (1986), in conjunction with the "governing sentence" rule contextually applied in *Thiret v. Kautzky*, 792 P.2d 801, 808 (Colo.1990), and first outlined by this court in *Price v. Mills*, 728 P.2d 715, 718 (Colo.1986). Because the "governing sentence" rule constitutes part of our interpretation of the statutory parole scheme, it is proper to consider Black's claim under a "facial" framework.

An equal protection claim is appropriate where legislation leads to disparate impacts on different elements of the group that the legislature intended to embrace within a law. "The Equal Protection Clause comes into question only when a law 'has a special impact on less than all the persons subject to its jurisdiction.'" *People in Interest of C.B.,* 740 P.2d 11, 17 (Colo.1987) (quoting *Board of County Comm'rs v. Flickinger,* 687 P.2d 975, 982 (Colo.1984)). Therefore, an equal protection analysis must begin with a threshold inquiry as to whether (1) persons who are in fact similarly situated, (2) are subjected by some governmental act to disparate treatment. *E.g., C.B.,* 740 P.2d at 17; *Flickinger,* 687 P.2d at 982.

### A.

In my opinion, the majority does not employ the proper test to determine whether persons are "similarly situated" for equal protection purposes. *See* maj. op. at 1260–1261. Stating first that "persons who commit different crimes and different combinations of crimes are not similarly situated," maj. op. at 1260, the majority reasons that "[t]hey are not similarly situated because inmates in the two categories have committed different crimes, and the multiple offenders will not always be released prior to Black or treated less harshly," maj. op. at 1261. Putting aside the fact that the majority conflates the questions of "similarly situated" and "disparate treatment," maj. op. at 1261 ("[t]hey are not similarly situated because . . . the multiple offenders will not always be released prior to Black or treated less harshly"), under the majority's approach those who raise equal protection arguments must be identically situated to those allegedly receiving favorable treatment. But "similarly situated" does not imply "identically situated," *see, e.g., Bennun v. Rutgers State Univ.,* 941 F.2d 154, 178 (3d Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992), and the majority's analysis embraces literalism to the detriment of jurisprudential underpinnings of the equal protection doctrine.

Black and all other sex offenders are similarly situated for the purposes of the discretionary parole provision, section 17–2–201(5)(a), 8A C.R.S. (1986). Whether individuals are "similarly situated" for equal protection purposes depends upon the purpose of the act in question. *See, e.g.,* John E. Nowak & Ronald D. Rotunda, *Constitutional Law* 571 (4th ed. 1991) ("Usually one must look to the end or purpose of the legislation in order to determine whether persons are similarly situated in terms of that governmental system."). Joseph Tussman and Jacobus tenBroek summarized the proper approach to a similarity of situation analysis in their seminal article on equal protection:

> [W]here are we to look for the test of similarity of situation which determines the reasonableness of a classification? The inescapable answer is that we must look beyond the classification to the purpose of the law. A reasonable classification is one which includes all persons who are similarly situated with respect to the purpose of the law.

> The purpose of a law may be either the elimination of a public 'mischief' or the achievement of some positive public good.

Joseph Tussman & Jacobus tenBroek, *The Equal Protection of the Laws,* 37 Cal. L.Rev. 341, 346 (1949). Therefore, one must review the purposes behind the discretionary parole provision to determine whether Black's claim satisfies the threshold inquiry of similarity of situation.

The General Assembly intended that the discretionary parole provision apply to "any" sex offender for good reason. *See* § 17–2–201(5)(a), 8A C.R.S. (1986). First, the legislature aimed to prevent individuals who may pose a heightened risk to society, including sex offenders, from being mandatorily released on parole when release is inconsistent with the purpose of public safety. *Lustgarden,* 966 F.2d at 555 (purpose of section 17–2–201(5)(a), 8A C.R.S. (1986), described as allowing the state to monitor "the reintroduction into society of sex offenders for purposes of public safety"). Second, and similarly, the legislature intended to recognize the heightened public safety concerns posed by the release of prisoners who have committed "particularly heinous crimes." *White II,* 866 P.2d at 1374 (citing *Kibel,* 701 P.2d at

44); *White I,* 656 P.2d at 693; *cf.* § 17–22.5–102.5, 8A C.R.S. (1986) (describing purposes of parole with respect to parole time computation and noting punishment as one such purpose "by assuring that [the prisoner's] length of incarceration and period of parole supervision are in relation to the seriousness of his offense"). Finally, the legislature intended to exclude sex offenders from the mandatory parole scheme to allow for extended treatment and rehabilitation when necessary. *Kibel,* 701 P.2d at 44 n. 13. All of these legislative purposes are reasonable, and relate rationally to the legislature's decision to differentiate between sex offenders and other criminals.

Once the purposes behind the discretionary parole provision are clear, it is apparent that the discretionary parole scheme is targeted at all sex offenders and that all such inmates are "similarly situated" for the purposes of the discretionary parole law. This interpretation is supported by the plain language of section 17–2–201(5)(a), 8A C.R.S. (1986), which specifically applies to "any" person sentenced for conviction of a sex offense. Not surprisingly, on other occasions we have defined in broad terms the class of persons subject to, or similarly situated under, section 17–2–201(5)(a), 8A C.R.S. (1986). *Campbell v. Solano,* 807 P.2d 583, 585 (Colo. 1991) (section 17–2–201(5)(a), 8A C.R.S. (1986), applies to " 'any' " sex offender (quoting § 17–2–201(5)(a), 8A C.R.S. (1986))); *Aue v. Diesslin,* 798 P.2d 436, 441 (Colo.1990) ("[T]he [discretionary parole] statute applies to all of those similarly situated, i.e., those persons sentenced for 'sex offenses' [as defined by section 16–13–202(5), during the relevant time frame] ..."); *Thiret,* 792 P.2d at 807 ("[T]he Parole Board has discretion to deny or to grant parole to all persons sentenced for a sex offense as defined by section 16–13–202(5) ...."); *accord Lustgarden v. Gunter,* 779 F.Supp. 500, 502 (D.Colo.1991) (section 17–2–201(5) excludes from mandatory parole persons sentenced for sex offenses), *aff'd,* 966 F.2d 552 (10th Cir.), *cert. denied,* 506 U.S. 1008, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992). In sum, both those convicted of a sex offense or a sex offense in conjunction with a lesser crime and those convicted of a sex offense in addition to a more serious crime fall within the purposes of section 17–2–201(5)(a), 8A C.R.S. (1986), and therefore are "similarly situated" with respect to that statutory provision. However, similarity of situation satisfies only the first half of the threshold equal protection inquiry.

**B.**

The second issue to be resolved under the threshold equal protection inquiry is whether those who are similarly situated are receiving disparate treatment under the relevant law. *E.g., C.B.,* 740 P.2d at 17; *Flickinger,* 687 P.2d at 982. The majority declines to assume that discretionary parole will result in continued incarceration and that mandatory parole will result in freedom from incarceration, but instead speculates that discretionary parole might result in release after only brief confinement and that violations of mandatory parole may result in reincarceration. *See* maj. op. at 1260, 1261. However, "the Equal Protection Clause of the Fourteenth Amendment requires that the statutory *ceiling* placed on imprisonment for any substantive offense be the same for all defendants...." *Williams v. Illinois,* 399 U.S. 235, 244, 90 S.Ct. 2018, 2023–24, 26 L.Ed.2d 586 (1970) (emphasis added) (in the context of enhanced punishment for involuntary nonpayment of mandatory fines by indigent criminals). The majority's willingness to hypothesize early release for prisoners subject to discretionary parole and to emphasize the possibility of parole revocation and reincarceration for those released on mandatory parole obscures the base reality in this case: one who commits a sex offense in addition to a more serious crime is released on mandatory parole, whereas one who commits a sex offense by itself or a sex offense in conjunction with a lesser crime can remain in prison for the entire term of the sex offense sentence. This is inconsistent with the requirement of a like statutory ceiling on imprisonment for those similarly situated. *See id.; see also People v. Calvaresi,* 188 Colo. 277, 282, 534 P.2d 316, 318 (1975) ("A statute which prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations is violative of a

person's right to equal protection of the laws.").

In analyzing a "facial" challenge to the parole system, we must not presume that discretionary parole will be granted or that mandatory parole will result in violation and reincarceration. The majority incorrectly assumes that because those who are sentenced for a sex offense by itself or in conjunction with a concurrent sentence for a lesser crime "may be granted discretionary parole," whereas those who are sentenced for a sex offense together with a concurrent sentence for a more serious crime will "not always" be "treated less harshly," that Black has failed to prove disparate treatment sufficient to trigger equal protection concerns. Maj. op. at 1261. In determining that the obviously disparate treatment does not result in an equal protection violation, the majority relies on presumptive hypotheticals, some of which might have found support in the results of an evidentiary hearing if Black's challenge had been analyzed under an "as applied" framework. *See Western Metal,* 851 P.2d at 880 n. 7 ("'as applied'" analysis requires inquiry into whether "'government officials who administer the law are applying it with different degrees of severity to different groups of persons'" despite a facially benign statutory framework) (quoting John E. Nowak et al., *Constitutional Law* at 600 (2d ed.1983)). The majority's other hypotheticals pose scenarios resulting in minimum incarceration under discretionary parole sentences and maximum incarceration under mandatory parole sentences, an approach that tips the statutory framework on its head.

Under a proper "facial" analysis, our inquiry should be restricted to whether the literal language of the discretionary parole statute, in combination with our statutory interpretation of that statute as embodied in the existing "governing sentence" rule, results in differential treatment of similarly situated persons. The clear answer is yes. First, inherent in the term "discretionary parole" is the principle that parole need never be granted. *See* § 17–2–201(5)(a), 8A C.R.S. (1986). We must assume for the purposes of this analysis that a sentence subject to discretionary parole will result in the maximum possible period of incarceration. *Rummel v. Estelle,* 445 U.S. 263, 280, 100 S.Ct. 1133, 1142, 63 L.Ed.2d 382 (1980) ("[An inmate's] inability to enforce any 'right' to parole precludes us from treating his life sentence as if it were equivalent to a [shorter] sentence. . . ."); *Lustgarden,* 966 F.2d at 555 ("Parole [under a statute dictating discretion in parole determinations] is a privilege; there is no constitutional or inherent right to parole."). Therefore, for the purposes of a "facial" equal protection challenge our analysis should encompass the principle that inmates subject to discretionary parole have no entitlement to parole release before serving the full terms of their sentences, and we cannot treat the sentence length of those subject to discretionary parole as anything less than the entire term of the sentence imposed.

In contrast to the discretionary parole process, one should assume that mandatory parole will result in release prior to the expiration of an inmate's full sentencing term. Again, a guarantee of parole release inheres in any mandatory parole scheme, assuming that the requisite good time and earned time requirements are satisfied. *Thiret,* 792 P.2d at 804–05 & n. 6. This court described a "right to mandatory parole" in *Thiret,* 792 P.2d at 808, and the court in *Lustgarden v. Gunter* characterized Colorado's mandatory parole as an entitlement, 966 F.2d at 553 n. 2, 554, in contrast to the "privilege" of discretionary parole, 966 F.2d at 555. Proceeding under a "facial" analysis, we must give effect to the statutory guarantee of mandatory parole release. Applying the statutes and our "governing sentence" rule, it is apparent that similarly situated sex offenders are subject to differing parole provisions and limits on incarceration, and that those who commit a sex offense in addition to a more serious crime fortuitously receive a more lenient guaranteed parole release than those who commit a sex offense by itself or in conjunction with a less serious crime.

Furthermore, even assuming that those inmates subject to discretionary parole may be released, the majority incorrectly assumes that "a longer sentence with a mandatory parole provision is a more serious sentence

than a shorter sentence with a discretionary parole provision" because "an offender on parole is still serving a sentence of imprisonment and is subject to reincarceration for a parole violation." Maj. op. at 1261 (citing *Vaughn v. Gunter*, 820 P.2d 659, 662 (Colo. 1991)). The discretionary parole process allows the imposition of a parole period of five years or the maximum sentence, whichever is less. § 17–2–201(5)(a), 8A C.R.S. (1986). And under the discretionary parole process, an inmate may be forced to serve the entire term of his sentence as a consequence of parole violation. *See* §§ 17–2–103(11), –201(5)(c)(II)(C), 8A C.R.S. (1986). In contrast, however, mandatory parole is a maximum one-year period and any violation of that mandatory parole can result in a limited reincarceration period that in no event exceeds two years, regardless of the original sentencing term. §§ 17–22.5–303(1), (2), 8A C.R.S. (1986).

The majority's reliance on *Vaughn* is misplaced, maj. op. at 1261, because *Vaughn* involved parole revocation procedures for crimes committed *after* July 1, 1984. *Vaughn*, 820 P.2d at 662 (citing § 17–22.5–303(4), 8A C.R.S. (1986)). The statement in *Vaughn* that revocation of mandatory parole can lead to reincarceration for the lesser of an inmate's entire sentencing term or five years is, therefore, inapplicable to the case we review today. In the case at hand, although the discretionary parole period can equal the lesser of the inmate's full sentencing term or five years, and revocation of discretionary parole can lead to reincarceration for the remainder of the original sentencing term, mandatory parole can result in only a one-year parole period, and revocation of mandatory parole results in a maximum of two years of reincarceration and cannot lead to reincarceration for the remainder of the original sentencing term. *Compare* §§ 17–2–201(5)(a), –103(11), –201(5)(c)(II)(C), 8A C.R.S. (1986) *with* §§ 17–22.5–303(1), (2), 8A C.R.S. (1986). The differences between parole and revocation procedures for mandatory and discretionary parole undermine any assumption that the supposedly "longer" sentence is "longer" in fact or even in theory.

There are other indications that a guaranteed release on mandatory parole is less onerous than the potential for release on discretionary parole. First, where inmates serve concurrent and equal terms for a sex offense and another offense, the "governing sentence" is the sex offense subject to discretionary parole rather than the other offense subject to mandatory parole. *Rather v. Colo. State Bd. of Parole*, 856 P.2d 860, 863 (Colo. 1993). Implicit in our ruling in *Rather* is (1) that the legislature intended that all sex offenders be subject to discretionary parole, and (2) the recognition that a term subject to discretionary parole is more onerous than the same term of years subject to mandatory parole. *Accord Mahn v. Gunter*, 978 F.2d 599, 601 (10th Cir.1992) ("We hold that, for Colorado offenses committed on or after July 1, 1979, but before July 1, 1985, when concurrent sentences are of equal length, if one of those sentences is for a sexual offense, parole is discretionary. To hold otherwise would place a prisoner who had committed both a sexual offense and another crime requiring mandatory parole in a better position than a prisoner who had been sentenced only for a sexual offense. This construction of the statutory parole scheme would be absurd and unwarranted.").

Furthermore, keeping in mind that upon achieving eligibility for parole by accumulating the necessary good time and earned time credits discretionary parole will not necessarily result in parole release whereas mandatory parole will result in parole release, there are fundamental differences between guaranteeing the release of an inmate into society and continuing to incarcerate an inmate subject to the mere possibility of a discretionary parole release, regardless of any potential parole revocation implications. As the United States Supreme Court has noted:

> Subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison.

*Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972); *see also id.* at 482 n. 8, 92 S.Ct. at 2601 n. 8 (" 'It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom.' ") (quoting *United States ex rel. Bey v. Conn. Bd. of Parole,* 443 F.2d 1079, 1086 (2d Cir.), *vacated as moot,* 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971)).

In sum, the statutory parole provisions provide (1) support for an assumption that those who commit a sex offense by itself or in conjunction with a lesser crime will serve their entire terms in incarceration, whereas those who commit a sex offense in addition to a more serious crime will be subject to a guaranteed and mandatory parole release, and (2) that those subject to discretionary parole can receive lengthy parole terms and even then are subject to reincarceration for the remainder of their original sentencing terms, whereas those subject to mandatory parole are limited to one year of parole and maximum two-year reincarceration periods following any parole revocation. As a result, I believe that Black has persuasively argued that similarly situated sex offenders are subject to disparate treatment dependent on the application of the statutory parole provisions in conjunction with the "governing sentence" rule and the inmates' resultant status as subject to discretionary or mandatory parole.

### V.

Black has met the threshold inquiries of similarity of situation and disparate treatment, but he must also satisfy the rational basis test in order to prevail on his equal protection claim. The rational basis test has two major components:

Under the traditional or rational basis standard of review, a statute that treats classes of persons differently will be upheld so long as the classification has a reasonable basis in fact—that is, the classification is based on differences that are real and not illusory—and is reasonably related to a legitimate governmental interest.

*Harris v. The Ark,* 810 P.2d 226, 230 (Colo. 1991); *accord, e.g., Bath v. Department of Revenue, Motor Vehicle Div.,* 758 P.2d 1381, 1386 (Colo.1988); *Dawson v. Public Employees' Retirement Ass'n.,* 664 P.2d 702, 707 (Colo.1983). Although Black's equal protection claim may be subject to a "strict scrutiny" standard of review,[7] I see no need to reach that issue because the continued appli-

7. Black's equal protection claim may warrant a strict scrutiny standard of review. Where a fundamental right is implicated, strict scrutiny is the proper method of review and "the state must establish that the classification is necessarily related to a compelling governmental interest." *E.g., Board of County Comm'rs v. Flickinger,* 687 P.2d 975, 982 n. 9 (Colo.1984).

There are conflicting indications regarding the proper standard of review for equal protection claims that involve mandatory parole provisions. On the one hand, the United States Supreme Court noted in *McGinnis v. Royster* that "[t]he determination of an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded require only some rational basis to sustain them," after the parties in *McGinnis* agreed that rational basis was the appropriate standard of review in that case. 410 U.S. 263, 270, 93 S.Ct. 1055, 1059–60, 35 L.Ed.2d 282 (1973). However, there are other indications that fairness in the criminal parole system is a fundamental right. *See* John E. Nowak & Ronald D. Rotunda, *Constitutional Law* 393, 889–93 (4th ed.1991) (the Supreme Court has implicitly recognized a right to fairness in the criminal process).

First, an analysis of what constitutes a "fundamental right" in Colorado does not necessarily parallel equal protection precedent in the federal system. A "fundamental right" need not have a literal root in the Colorado Constitution. *Lujan v. Colo. State Bd. of Educ.,* 649 P.2d 1005, 1017 & n. 12 (Colo.1982). Instead, "[f]undamental rights are those rights which have been recognized as having a value essential to individual liberty in our society." *Bath v. Department of Revenue, Motor Vehicle Div.,* 758 P.2d 1381, 1385 (Colo.1988); *accord Austin v. Litvak,* 682 P.2d 41, 49 (Colo.1984); *Lujan,* 649 P.2d at 1015 n. 7. Therefore, infringements on personal liberty are of paramount importance under any equal protection analysis of "fundamental rights" under the Colorado Constitution. The extent of any right to fairness in the criminal process remains undefined at both the federal and state level, but "a restraint on liberty" implicates "a fundamental right." *See J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982). Albeit true that restraints on liberty are inherent in incarceration, opportunities to achieve personal freedom must be extended equally to all inmates who are similarly situated.

Second, the balance of the United States Supreme Court's statements regarding this issue

cation of the parole provisions in conjunction with the existing "governing sentence" rule to sex offenders bears no rational relationship to a legitimate governmental interest.

The first prong of the rational basis test, *see, e.g., Harris,* 810 P.2d at 230—whether there is a reasonable basis in fact to distinguish between those who commit a sex offense by itself or in conjunction with a lesser crime and those who commit a sex offense in addition to a more serious crime—can be disposed of easily. The latter category of individuals has posed, and may continue to pose, a greater threat to society. It is certainly reasonable to treat disparately two groups of criminals who have engaged in different combinations of crimes, for those who commit the more serious combinations of offenses reasonably can be considered in need of additional correctional supervision.

The existing parole scheme, however, fails the second prong of the rational basis test, *i.e.,* whether the method of disparate treatment bears a reasonable or rational relationship to a legitimate governmental purpose. Again, the purposes of subjecting sex offenders to the discretionary parole provision include protection of public safety, *Lustgarden,* 966 F.2d at 555, recognition of concerns

posed by the release of persons who have committed "particularly heinous crimes," *White II,* 866 P.2d at 1374 (citing *Kibel,* 701 P.2d at 44); *White I,* 656 P.2d at 693, and creation of flexibility in rehabilitation and treatment, *Kibel,* 701 P.2d at 44 n. 13. It is self-evident that allowing those who are convicted of a sex offense and a more serious offense to benefit from mandatory parole provisions, but subjecting those who are convicted of a sex offense only, or in conjunction with a lesser offense, to continued incarceration subject to a purely discretionary parole process, does not relate rationally to the aforementioned legislative purposes that clearly aim to subject "any" sex offender to a discretionary parole process for good reason. *See* § 17–2–201(5)(a), 8A C.R.S. (1986). Indeed, any rational implementation of the legitimate governmental interests at stake would dictate an entirely contrary plan: those convicted of the more serious combination of crimes should serve longer periods of incarceration before obtaining a right to parole.

## VI.

In order to obviate the equal protection violation inherent in the statutory scheme as

offer support for the idea that disparate treatment of similarly situated inmates for purposes of parole may well constitute an infringement on a fundamental right. After all, parole may not be "the absolute liberty to which every citizen is entitled," but it remains a "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). As the United States Supreme Court observed in *Morrissey v. Brewer:*

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.... By whatever name [either as a 'right' or as a 'privilege'], the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.

*Id.* at 482, 92 S.Ct. at 2600–01. At a minimum, we know that the "loss of liberty" stemming from a parole revocation is a "serious deprivation," entitled to due process protection. *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82 & n. 4, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973) (citing *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2599–2600).

Furthermore, constitutional protections against infringements on liberty are heightened in the mandatory parole context. Once estab-

lished by the State, mandatory parole falls within the guarantees of "liberty" protected by the Fourteenth Amendment. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.... [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty'...."); *Lustgarden v. Gunter,* 779 F.Supp. 500, 503 (D.Colo.1991) ("The law is clear that if a state creates a right to good time credits that *automatically* entitle an inmate to release before the full term of the sentence is served, denying early release constitutes a deprivation of liberty.") (emphasis in original) (citing *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975), *aff'd,* 966 F.2d 552 (10th Cir.), *cert. denied,* 506 U.S. 1008, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992). Although no inmate has a "right" to parole in the absence of an applicable parole statute, "a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State." *Wolff,* 418 U.S. at 558, 94 S.Ct. at 2976.

we have interpreted it, I would modify the "governing sentence" rule to eliminate the constitutional infirmity. As the majority notes, our original "governing sentence" rule was premised on the idea that "a longer sentence with a mandatory parole provision is a more serious sentence than a shorter sentence with a discretionary parole provision" because "an offender on parole is still serving a sentence of imprisonment and is subject to reincarceration for a parole violation." Maj. op. at 1261 (citing *Vaughn*, 820 P.2d at 662). But as I have outlined, *supra* part II, our "governing sentence" rule produces anomalous results in situations such as those presented by the case before us, and the rule is premised on reincarceration assumptions that lack universal applicability, *see supra* part V(B). Black's equal protection challenge embodies the problems with our existing "governing sentence" rule, and we should now take account of the United States Supreme Court's warning that although "[i]t is clear that a 25–year sentence generally is more severe than a 15–year sentence," *Solem v. Helm*, 463 U.S. 277, 294, 103 S.Ct. 3001, 3012, 77 L.Ed.2d 637 (1983), *questioned on other grounds, Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), "[t]he possibility of parole may complicate the comparison, depending upon the time and conditions of its availability," *Solem*, 463 U.S. at 294 n. 19, 103 S.Ct. at 3012 n. 19.

The "governing sentence" rule should be modified so that one who is convicted of offenses requiring both mandatory and discretionary parole is subject to a hybrid composed of the "longest" sentence, with discretionary parole beginning on the latest parole eligibility date and continuing throughout the sentencing term that would otherwise be subject to discretionary parole, converting to mandatory parole after the term subject to discretionary parole has been completely served. Such a construction of the "governing sentence" rule better comports with the directives of (1) the statutory parole provision that discretionary parole should apply to "any" sex offender, § 17–2–201(5)(a), 8A C.R.S. (1986), and (2) the statutory sentencing provision requiring that "when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence," § 17–22.5–101, 8A C.R.S. (1986).

Indeed, the legislature intended that courts apply hybrid sentences for parole purposes. *See* § 17–22.5–101, 8A C.R.S. (1986). We acknowledged as much in *Price v. Mills:*

> [Section 17–22.5–101] indicates a legislative decision that for purposes of administering the various time-reducing credits defined by the General Assembly, the Department must employ some type of hybrid or "composite" sentence to which the credits may be applied.

728 P.2d at 719. Albeit true that this court in *Thiret* rejected a "hybrid" sentence, the proposal under consideration in that case would have required that discretionary parole apply to the "longer" of the two concurrent sentences even after the only sentence providing for discretionary parole had been fully served. *Thiret*, 792 P.2d at 807–08. Under the proposal we rejected in *Thiret*, one who committed a sex offense in addition to a more serious offense would have been unfairly subjected to a discretionary parole process for longer than the entire sex offense term. *See id. Thiret* therefore is clearly distinguishable from the case at hand today.

In *Vaughn v. Gunter*, we described our reason for rejecting the department of corrections' proposal to extend discretionary sentencing to an inmate's entire term where the inmate had already served the sex offense term that was subject to discretionary parole:

> [In *Thiret*,] [t]he Department argued for a composite or hybrid sentence which would take features from both sentences, namely the ten-year sentence imposed on the attempted murder charge and the discretionary parole applicable to the sexual assault charge. It made the argument despite the fact that the sentence to which discretionary parole applied had been completely served.

*Vaughn*, 820 P.2d 659, 661 (Colo.1991). In addition, the inmate in *Thiret* did not raise any constitutional arguments that might have warranted a modification of the "governing

sentence" rule. *See* 792 P.2d at 803–08. In fact, another court anticipated the problems that the *Thiret* "governing sentence" rule would face in application to situations outside of the narrow factual framework presented in that case. *Mahn,* 978 F.2d at 601 ("We note that in *Thiret* the sentence for the sexual offense had been completely served before the petitioner became eligible for parole of any type on the attempted murder charge. The twelve-year sentence for sexual assault in this case, however, has not been completely served. Whether that factor would have any bearing on the *Thiret* analysis in a case where the governing sentence required mandatory parole, but a concurrent sentence for a sexual offense had not been completely served, is a question we do not address."). Finally, the modified "governing sentence" rule that I would institute was presented by the parties in their briefs to this court.[8]

## VII.

In sum, I believe that the discretionary parole provision in conjunction with the existing "governing sentence" rule leads to logically untenable and unconstitutional results. The legislature enacted discretionary parole provisions to promote public safety, *Lustgarden,* 966 F.2d at 555, to recognize heightened concerns posed by the release of persons who have committed "particularly heinous crimes," *White II,* 866 P.2d at 1374 (citing *Kibel,* 701 P.2d at 44); *White I,* 656 P.2d at 693, and to provide the parole board with flexibility in cases that may require continued treatment or rehabilitation, *Kibel,* 701 P.2d at 44 n. 13. The legislature further directed that the discretionary parole provisions be applicable to "any" sex offender, § 17–2–201(5)(a), 8A C.R.S. (1986), and prescribed the application of hybrid sentences where inmates are subject to more than one sentencing term, § 17–22.5–101, 8A C.R.S. (1986). All of this can be achieved within constitutional parameters by simply modify-

ing the "governing sentence" rule: when one is subject to two or more concurrent terms, one of which is subject to discretionary parole and one of which is subject to mandatory parole, the "longest" sentence governs, but with discretionary parole beginning on the latest parole eligibility date and continuing throughout the sentencing term that would otherwise be subject to discretionary parole, converting to mandatory parole after the term subject to discretionary parole has been completely served.

The majority instead chooses to apply strictly a "governing sentence" rule first adopted outside of the sex offender and discretionary parole context, in the process allowing those who commit a sex offense in conjunction with a more serious crime to be guaranteed a mandatory parole release even while those who commit the same sex offense by itself or in conjunction with a lesser crime are subject to continued incarceration. Because the discretionary parole provisions are aimed at all sex offenders, because sex offenders are subject to disparate parole treatment under the majority scheme, and because the disparate treatment violates equal protection guarantees by bearing no rational relationship to any legitimate governmental purpose, I must respectfully dissent. Instead, I would simply modify the "governing sentence" rule as indicated. As a result, I would reverse the judgment of the court of appeals and return the case to that court with directions to affirm the judgment of conviction and sentence entered by the trial court.

ERICKSON and KIRSHBAUM, JJ., join in this concurrence and dissent.

---

8. Black opposes a modification of the "governing sentence" rule, arguing in part certain *ex post facto* and due process concerns of those imprisoned on a sex offense in addition to a more serious offense and who expected to be released on mandatory parole. I believe that these arguments are meritless, because a modified "governing sentence" rule is the only foreseeable and

constitutionally logical extension of the statutory parole scheme and our existing precedent in this area. *See generally Lustgarden v. Gunter,* 779 F.Supp. 500, 502–03 (D.Colo.1991), *aff'd,* 966 F.2d 552 (10th Cir.), *cert. denied,* 506 U.S. 1008, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992); *Aue v. Diesslin,* 798 P.2d 436, 438–41 (Colo.1990).